# IN THE COURT OF APPEALS OF TENNESSEE,
## AT NASHVILLE

FILED

**June 18, 1999**

**Cecil W. Crowson**
**Appellate Court Clerk**

|  |  |  |
|---|---|---|
| IN RE: ESTATE OF HAROLD L. | ) | Sumner County Chancery |
| JENKINS, Deceased | ) | Probate Court No. 93P-30 |
|  | ) |  |
|  | ) |  |
|  | ) | C.A. No. 01A01-9804-PB-00223 |
|  | ) |  |

From the Chancery Probate Court of Sumner County at Gallatin.
**Honorable Tom E. Gray, Chancellor**

**Timothy L. Warnock**,
BOWEN, RILEY, WARNOCK & JACOBSON, PLC, Nashville, Tennessee
**Michael D. Sontag**,
BASS, BERRY & SIMS, PLC, Nashville, Tennessee
Attorneys for Appellant Dolores Henry Jenkins.

**Charles W. McElroy**,
WHITE & REASOR, Nashville, Tennessee
**Brenda Rhoton Little**,
PARKER & CROFFORD, Nashville, Tennessee
Attorneys for Appellees/Cross Appellants Joni L. Jenkins and Kathy A. Jenkins.

**Denty Cheatham**,
**Rose Palermo**,
CHEATHAM & PALERMO, Nashville, Tennessee
Attorneys for Appellee Co-Executors of the Estate Of Harold L. Jenkins, Deceased, Hugh C.
Carden and Donald W. Garis.

**Jimmy Harold Jenkins**, Pro Se
**Michael Lloyd Jenkins**, Pro Se

OPINION FILED:

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**CANTRELL, J.**: (Concurs)

*Factual and Procedural History*

Harold L. Jenkins ("Decedent"), professionally known as Conway Twitty, died on June 5, 1993. Prior to his death, the Decedent executed a last will and testament and two codicils bequeathing $50,000.00 to Velma Dunaway, the Decedent's mother, and the remainder of his estate to Joni Jenkins, Kathy Jenkins, Jimmy Jenkins, and Michael Jenkins ("Children"), the Decedent's four adult children. On June 14, 1993, these documents were admitted to probate and Hugh Carden and Donald Garis ("Co-Executors") were appointed to serve as the co-executors of the Decedent's estate.

The Decedent's surviving spouse, Dolores Henry Jenkins ("Surviving Spouse"), filed a petition for an elective share of the Decedent's estate on December 10, 1993. A dispute subsequently arose among the parties regarding the proper calculation of the Surviving Spouse's elective share. Consequently, the Decedent's daughters Joni and Kathy Jenkins filed a motion requesting that the trial court make a determination regarding the value of the Surviving Spouse's elective share. Additionally, the Co-Executors filed a motion seeking partial summary judgment regarding certain legal issues pertinent to the calculation of the Surviving Spouse's elective share. After a hearing, the trial court held (1) that the Decedent's net estate did not include proceeds of certain life insurance policies that had been assigned to and were paid directly to Temple Medley, the Decedent's ex-wife, (2) that, when calculating the amount of the Decedent's net estate, the value of the Decedent's real property should be reduced by the amount of indebtedness secured by this property, (3) that the value of the Decedent's net estate should reflect any appreciation or depreciation of the Decedent's assets occurring prior to the setting aside of the Surviving Spouse's elective share, and (4) that the Surviving Spouse is entitled to receive a one-third fixed share of the income earned by the Decedent's assets prior to the distribution of her elective share. The Surviving Spouse filed a motion to reconsider, arguing that the changing fraction method, rather than the fixed fraction method, should be used when calculating her share of the income generated by the assets in the Decedent's estate prior to the distribution of her elective share. The trial court granted the

motion and amended its prior ruling to reflect that the Surviving Spouse's share of this income should be calculated using the changing fraction method.

The Co-Executors subsequently filed a motion seeking instructions from the court regarding the disposition of the Decedent's intellectual property.[1] After a hearing on the matter, the trial court entered an order allowing the Children and the Surviving Spouse to determine the fair market value of the intellectual property by bidding on this property. The court's order further provided that the intellectual property would be distributed to the highest bidder and that the amount of the winning bid would be charged against that party's share of the Decedent's estate. After placing the highest bid, the Children filed a motion requesting the court to direct that the Surviving Spouse is not entitled to a share of the income generated by the Decedent's intellectual property. The trial court entered an order denying the motion. Additionally, the court entered an order designating several of its prior rulings as final and appealable. This appeal followed.

### Issues and Standard of Review

The issues raised on appeal, as we perceive them, are as follows:

I.   Whether the proceeds of certain life insurance policies that had been assigned to and were paid directly to the Decedent's ex-wife should be included in the Decedent's net estate.

II.  Whether, when calculating the Decedent's net estate, the value of the Decedent's property should be reduced by the amount of indebtedness secured by this property.

III. Whether the Surviving Spouse is entitled to a share of the income earned by the Decedent's assets prior to the distribution of the Surviving Spouse's elective share.

IV.  Assuming that the Surviving Spouse is entitled to a share of this income, whether her share should be determined using the changing fraction method of calculation.

V.   Assuming that the changing fraction method should be used

---

[1]This asset consists of three categories of property including (1) the right to receive future songwriter royalties, (2) the right to receive future recording artist royalties, and (3) the right to receive income from licensing agreements and other enumerated intellectual properties.

when calculating the Surviving Spouse's share of this income, whether the changing fraction method should also be used when calculating her share of the administrative expenses associated with the generation of the income.

VI.     Whether the Surviving Spouse is entitled to a share of the income generated by the Decedent's intellectual property.

Each of the foregoing issues involves a question of law. Thus, we review the ruling of the trial court *de novo* with no presumption of correctness. ***See, e.g., Bell v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg***, 986 S.W.2d 550, 554 (Tenn. 1999)(citations omitted); T.R.A.P. 13(d).

*Life Insurance Proceeds*

Prior to his marriage to the Surviving Spouse, the Decedent was married to Temple Medley. In conjunction with their divorce, the Decedent and Ms. Medley entered into a property settlement agreement requiring the Decedent to assign to Ms. Medley life insurance proceeds sufficient to pay his outstanding alimony obligation. The Decedent then executed collateral assignments of five insurance policies purchased by the Decedent from Executive Life Insurance Company ("Executive Life"). With these assignments, the Decedent transferred to Ms. Medley "all right, title and interest" in these policies, including the following enumerated rights:

1.     The sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity;

2.     The sole right to surrender the Policy and receive the surrender value thereof at any time provided by the terms of the Policy and at such other times as the Insurer may allow;

3.     The sole right to obtain one or more loans or advances on the Policy, either from the Insurer or, at any time, from other persons, and to pledge or assign the Policy as security for such loans or advances;

4.     The sole right to collect and receive any and all distributions or shares of surplus, dividend deposits or additions to the Policy now or hereafter made or apportioned thereto, and to exercise any and all options contained in the Policy with respect thereto; provided, that unless and until the Assignee shall notify the Insurer in writing to the contrary, the distributions or shares of surplus, dividend deposits

and additions shall continue on the plan in force at the time of this assignment; and

5.   The sole right to exercise all nonforfeiture rights permitted by the terms of the Policy or allowed by the Insurer and to receive all benefits and advantages derived therefrom.

However, the Decedent expressly reserved the following specific rights:

1.   The right to collect from the Insurer any disability benefit payable in cash that does not reduce the amount of insurance;

2.   The right to designate and change beneficiary; and

3.   The right to elect any optional mode of settlement permitted by the Policy or allowed by the Insurer; but the reservation of these rights shall in no way impair the right of the Assignee to surrender the Policy completely with all its incidents or impair any other right of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made subject to this assignment and to the rights of the Assignee hereunder.

The Decedent exercised the second of these reserved rights, naming his estate as the beneficiary of each of the five life insurance policies. After the Decedent's death, Executive Life paid $2,045,000.00 of the proceeds of these policies directly to Ms. Medley. After receiving a release from Ms. Medley, Executive Life then paid the remaining $2,090,488.80 of these proceeds to the Co-Executors of the Decedent's estate.

The amount of a surviving spouse's elective share is governed by section 31-4-101 of the Tennessee Code Annotated. Under the version of this statute that was in effect on the date of the Decedent's death, the Surviving Spouse's elective share is equal to one-third of the Decedent's net estate. *See* Tenn. Code Ann. § 31-4-101(a) (Supp. 1993).[2] This statute defined the term "net estate" as follows:

---

[2]In 1997, the Tennessee General Assembly eliminated this provision and replaced it with an accrual-type elective share statute. *See* 1997 Tenn. Pub. Acts ch. 426, § 17. Under the current statute, the surviving spouse's share of the decedent's net estate is calculated according to the length of time that the decedent was married to the surviving spouse. *See* Tenn. Code Ann. § 31-4-101(a) (Supp. 1998)(effective January 1, 1998).

The net estate includes all of the decedent's real and personal property subject to disposition under the terms of the decedent's will or the laws of intestate succession reduced by funeral and administrative expenses, homestead, exemptions and year's support.

Tenn. Code Ann. § 31-4-101(b) (Supp. 1993).[3] The crucial question in the instant case is whether the life insurance proceeds that were paid directly to Ms. Medley qualify as "property subject to disposition under the terms of the decedent's will or the laws of intestate succession." Noting that the Decedent's estate was the named beneficiary of these policies, the Surviving Spouse contends that the proceeds paid to Ms. Medley are subject to disposition under the Decedent's will. The Co-Executors and the Children, however, argue that these proceeds never became part of the Decedent's estate and thus are not subject to disposition under the Decedent's will.

In *Phipps v. Watts*, 781 S.W.2d 863 (Tenn. App. 1989), this Court considered a life insurance issue similar to the one raised in the case at bar. The decedent's estate received $94,000.00 as the beneficiary of a life insurance policy. *See id.* at 864. The executor argued that the proceeds of this policy qualified as "exemptions" within the meaning of section 31-4-101(b) and thus should not be included in the decedent's net estate when calculating the amount of the surviving spouse's elective share. *See id.* at 865. We disagreed, finding that these exemptions include only the items of personal property listed in section 30-2-101. *See id.* We recognized, however, that there are some circumstances under which life insurance proceeds should not be included in the decedent's net estate, stating as follows:

> [T]here have been cases where insurance proceeds have been held to be exempt from the claims of the dissenting widow. But, these cases turned on the fact that the insurance never became a part of the decedent's estate—not on the fact that the insurance was one of the exemptions mentioned in Tenn. Code Ann. § 31-4-101(b).

---

[3]This provision was also amended in 1997. *See* 1997 Tenn. Pub. Acts ch. 426, § 17. Currently, subsection (b) provides as follows:

> The value of the net estate includes all of the decedent's real and personal property subject to disposition under the provisions of the decedent's will or the laws of intestate succession, reduced by the following: secured debts to the extent that secured creditors are entitled to realize on the applicable collateral, funeral and administration expenses, and award of exempt property, homestead allowance and year's support allowance.

Tenn. Code Ann. § 31-4-101(b) (Supp. 1998)(effective January 1, 1998).

*Id.* at 866. We then concluded as follows:

> We think that the plain language in the 1972 amendment makes the proceeds of life insurance payable to a testate estate a part of the estate regardless of the disposition of the insurance proceeds in the will. The insurance is still exempt from the claims of creditors but is an asset of the estate "as ordinary cash." Thus, the insurance would be part of the estate for the purpose of calculating the dissenting widow's elective share.

*Id.*

Applying *Phipps* to the facts of the case at bar, we agree with the Co-Executors and the Children that the life insurance proceeds that were paid directly to Ms. Medley should not be included in the Decedent's net estate. Unlike the insurance proceeds in *Phipps*, these funds were not "payable to a testate estate." Each of the collateral assignments executed by the Decedent transferred to Ms. Medley "[t]he sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity." Thus, the insurance proceeds were payable to Ms. Medley rather than to the Decedent's estate. Recognizing its obligation under the assignments, Executive Life paid $2,045.000.00 of the insurance proceeds directly to Ms. Medley. These funds were not deposited into the estate's bank account and at no time did they become subject to the control of the Co-Executors. Consequently, the insurance proceeds paid directly to Ms. Medley never became part of the Decedent's estate and thus were not "subject to disposition under the terms of the decedent's will" as required by section 31-4-101(b). Accordingly, we affirm the trial court's conclusion that these proceeds should not be included in the Decedent's net estate when calculating the amount of the Surviving Spouse's elective share.

### Secured Debts

At the time of his death, the Decedent owned certain assets that were encumbered by secured debt. The trial court held that, for purposes of calculating the Surviving Spouse's elective share, only the Decedent's equity in this property should be included in the net estate. The Co-Executors and the Children agree with the ruling of the trial court. The Surviving Spouse, however,

contends that her elective share should be calculated without regard to the secured debts of the Decedent.

The statutory procedure for calculating a surviving spouse's elective share is set forth in section 31-4-101 which, on the date of the Decedent's death, provided as follows:

> (a) A decedent's surviving spouse has the right to elect to take an elective share. The elective share is one third (1/3) of the decedent's net estate as defined in subsection (b). The right to elect an elective share is available to the surviving spouse of an intestate decedent and a testate decedent if the surviving spouse elects against the decedent's will. When the elective share is determined, it is exempt from the unsecured debts of the decedent incurred after April 1, 1977. In determining the elective share, it is not reduced by any estate or inheritance taxes.
>
> (b) The net estate includes all of the decedent's real and personal property subject to disposition under the terms of the decedent's will or the laws of intestate succession reduced by funeral and administration expenses, homestead, exemptions and year's support.

Tenn. Code Ann. § 31-4-101 (Supp. 1993). When construing this statute, we must attempt to ascertain and give effect to the intent of its drafters, looking primarily to the natural and ordinary meaning of the words used. *See, e.g., Browder v. Morris*, 975 S.W.2d 308, 311 (Tenn. 1998). If, after examining these words, the purpose of section 31-4-101 remains unclear, we may then look to the history of this provision as evidence of legislative intent. *See Kendrick v. Kendrick*, 902 S.W.2d 918, 923 (Tenn. App. 1994)(citations omitted).

Section 31-4-101(a) specifically provides that the surviving spouse's elective share is exempt from the decedent's unsecured debts. *See* Tenn. Code Ann. § 31-4-101(a) (Supp. 1993). The Co-Executors and the Children argue that this language implicitly suggests that the elective share is not exempt from the Decedent's secured debts and that, therefore, the value of the Decedent's encumbered property must be reduced by the amount of the Decedent's secured debt before this property is included in the net estate. Although we agree that there is no exemption under section 31-4-101(a) for the secured debts of the Decedent, we do not think that this omission in any way affects the calculation of the Surviving Spouse's elective share. Rather, it affects only the priority of payment. The unsecured debt exemption is preceded by the phrase "[w]hen the elective

share is determined," indicating that the exemption becomes relevant only after the Surviving Spouse's elective share is calculated. Thus, we find that the failure of the drafters to provide an exemption for the Decedent's secured debts in section 31-4-101(a) has no impact on the resolution of the case at bar.

In support of their position, the Co-Executors and the Children also rely on the language in subsection (b) stating that the net estate includes all property that is "subject to disposition under the terms of the decedent's will or the laws of intestate succession." Essentially, they argue that only the equity in the Decedent's encumbered property, rather than its full fair market value, is subject to disposition under the terms of the Decedent's will. This argument, however, addresses the value that should be assigned to the Decedent's encumbered property, not whether this property should be included in the Decedent's net estate. The encumbered assets were owned by the Decedent at the time of his death. Although this property remained subject to valid security interests, the Decedent was entitled to and did in fact dispose of the encumbered assets under his will. Thus, we reject the contention of the Co-Executors and the Children that the "subject to disposition" language in section 31-4-101(b) requires a reduction in the net estate by the amount of the Decedent's secured debt.

Contrary to the position of the Co-Executors and the Children, the Surviving Spouse contends that section 31-4-101(b) does not require a reduction for the Decedent's secured debts. Subsection (b) expressly provides that, when calculating the net estate, the decedent's property must be reduced by certain enumerated items including (1) funeral and administration expenses, (2) homestead, (3) exemptions, and (4) year's support. *See* Tenn. Code Ann. § 31-4-101(b) (Supp. 1993). The drafters of this provision did not include the Decedent's secured debts among the items listed above. Although this omission does not conclusively resolve the issue in the case at bar, it is consistent with the Surviving Spouse's contention that the net estate should be calculated without regard to the Decedent's secured debts.

As stated above, the Decedent's encumbered property is subject to disposition under the Decedent's will and thus should be included in the net estate. The parties disagree, however, regarding the value that should be assigned to this property. Section 31-4-101 does not specifically

address this disputed issue. Consequently, we think that, with respect to the value that should be assigned to a decedent's encumbered property, there is more than one reasonable interpretation of this provision. When a statute being construed does not yield a single, clear interpretation, it is appropriate to consider the legislative history of the provision in order to ascertain the intent of its drafters. *See State v. Carter*, 952 S.W.2d 417, 419 (Tenn. 1997) (citations omitted). *See also State v. Patton*, 898 S.W.2d 732, 737 (Tenn. Crim. App. 1994) ("If, however, reasonably informed persons could differ as to the meaning of that section in the context of the chapter, there must be an authoritative interpretation."). Thus, in the case at bar, we find it necessary to examine the legislative history of section 31-4-101.

In 1977, the Tennessee General Assembly enacted a statute defining the term "net estate" as follows:

> The net estate shall include all of the decedent's property reduced by funeral and administration expenses, the payment of taxes, homestead, exemptions, and year's support.

1977 Tenn. Pub. Acts ch. 25, § 3 (codified as Tenn. Code Ann. § 31-602(b) (Supp. 1978)).[4] As originally drafted, this statute provided that the property in the net estate shall be reduced by "funeral and administrative expenses, homestead, exemptions and year's support, ***and debts and charges against the estate***." H. R. 334, 90th General Assembly (1977)(emphasis added). The phrase "and debts and charges against the estate" was removed, however, prior to the enactment of the statute. This suggests that the General Assembly considered the secured debt issue raised in the case at bar and concluded that, when calculating the net estate, the decedent's property should not be reduced by the amount of debt that is secured by this property.

Section 31-4-101(b) was further amended in 1997 and currently provides as follows:

> The value of the net estate includes all of the decedent's real and personal property subject to disposition under the provisions of

---

[4]This provision was renumbered in 1984. *See* Tenn. Code Ann. § 31-2-103 (1984)(amended by 1985 Tenn. Pub. Acts ch. 140, § 28 (codified as Tenn. Code Ann. § 31-4-101(b) (Supp. 1985))).

the decedent's will or the laws of intestate succession, reduced by the following: ***secured debts to the extent that secured creditors are entitled to realize on the applicable collateral***, funeral and administration expenses, and award of exempt property, homestead allowance and year's support allowance.

Tenn. Code Ann. § 31-4-101(b) (Supp. 1998)(emphasis added). This version of the statute became effective on January 1, 1998 and thus was not in effect on the date of the Decedent's death. ***See*** 1997 Tenn. Pub. Acts ch. 426, § 26. Nevertheless, we think that this amendment is relevant to our construction of the prior statute. Unlike the version of section 31-4-101(b) that applies to the case at bar, the current version of this statute specifically provides that the surviving spouse's elective share should be reduced by the decedent's secured debts. Although the drafters of the 1997 amendment included this language regarding secured debts, they did not alter the "subject to disposition" language of the statute. This suggests that "all of the decedent's real and personal property subject to disposition under the provisions of the decedent's will" must be included in the net estate based on its fair market value rather that the decedent's equity in this property. Otherwise, the current version of section 31-4-101(b) would effectively provide for a double reduction in the net estate by the amount of the decedent's secured debt.[5] Thus, the fact that the drafters of the 1997 amendment did not alter the "subject to disposition" language supports the Surviving Spouse's contention that this language does not require a reduction for the secured debt of the decedent before inclusion of the decedent's property in the net estate.

Although we are unaware of any Tennessee cases addressing the precise issue raised in the case at bar, we have examined three cases involving a related estate and inheritance tax issue. In ***Williams v. Commissioner of Internal Revenue***, 103 T.C. 451 (1994)("***Williams I***"), the probate court calculated the surviving spouse's elective share without regard to the decedent's secured debts

---

[5]Assume for example that the decedent died owning a piece of real property with a fair market value of $200,000.00. At the time of the decedent's death, however, this property was subject to secured debt totaling $50,000.00. Under the interpretation of the "subject to disposition" language espoused by the Co-Executors and the Children, this property would be included in the decedent's net estate only to the extent of the decedent's equity in the property or $150,000.00. The current version of section 31-4-101(b), which shares the same "subject to disposition" language as the statute that is applicable to the case at bar, further provides for a reduction in the net estate equal to the amount of the decedent's secured debts. Thus, the $150,000.00 in the decedent's net estate would again be reduced by $50,000.00. Because we do not think this was the result intended by the drafters of section 31-4-101(b), we decline to construe the "subject to disposition" language of the statute in the manner suggested by the Co-Executors and the Children.

and satisfied the elective share using certain unencumbered assets contained in the decedent's estate. *See id.* at 453, 453 n.4. In a subsequent action in federal tax court, the estate argued that its marital deduction included the entire amount of the surviving spouse's elective share. *See id.* at 453-54. The tax court disagreed, holding that, when determining the marital deduction, the surviving spouse's elective share must be reduced by a proportionate share of the decedent's secured debts. *See id.* at 464. Additionally, in **Estate of Williams v. Huddleston**, 938 S.W.2d 415 (Tenn. 1997)("**Williams II**"), the Tennessee Supreme Court considered whether the entire amount of the surviving spouse's elective share qualifies for the marital deduction for purposes of calculating the amount of state inheritance tax owed by the decedent's estate. *See id.* at 418. The court reached a different conclusion than the tax court in **Williams I**, holding as follows:

> [A]ssuming that the elective share was determined and funded according to law, which is not decided in this case, the property constituting the elective share passed from the decedent to the surviving spouse, and "an amount equal to" the full value of the elective share qualifies for the marital deduction under Tenn. Code Ann. § 67-8-315(a)(6).

*Id.* at 419. The court expressly stated that its holding does not serve as authority for the resolution of certain pretermitted issues, including those related to the calculation of the surviving spouse's elective share. *See id.* at 418. Despite this limitation, the court stated by way of dicta that "if property subject to the decedent's secured debts is included in the elective share, as it may be, only the value of the property in excess of the debt secured would be included in determining the value of the elective share and also the marital deduction." *Id*. at 419 (footnote omitted). Additionally, the court commented that "[t]he procedure followed by the probate court constitutes a significant departure from prior law and may invite examination of Section 31-4-101 by the legislature." *Id.* at 418 n.2. Finally, in **Estate of Tenenbaum v. Commissioner of Internal Revenue**, 112 F.3d 251 (6th Cir. 1997), the Sixth Circuit Court of Appeals was presented with an issue identical to the one raised in **Williams I**. *See id.* at 252. Relying on the ruling of the Tennessee Supreme Court in **Williams II**, the Sixth Circuit held that, when calculating the federal marital deduction, the estate is not required to reduce the surviving spouse's elective share in order to reflect the extent to which the elective share is burdened by the decedent's secured debts. *See id.*

As noted above, the court in *Williams II* limited its holding to the narrow tax issue with which it was presented. For the same reasons cited in *Williams II*, we think that *Williams I* and *Estate of Tenenbaum* should be similarly limited. The specific issue raised in these cases involved the calculation of the marital deduction, not the proper method of calculating the surviving spouse's elective share. Thus, although *Williams I*, *Williams II*, and *Estate of Tenenbaum* contain dicta regarding the calculation of the elective share, we do not think that these comments are controlling with respect to the secured debt issue raised in the case at bar.

Based on the legislative history of section 31-4-101, we find that, under the version of this provision that was in effect on the date of the Decedent's death, the net estate should be calculated without regard to any debts that were secured by the Decedent's property. Thus, the trial court in the instant case erred in its conclusion that only the Decedent's equity in this property, rather than its fair market value, should be included in the net estate.

### *Income*

During the administration of the Decedent's estate, the Decedent's assets have generated a substantial amount of income. The trial court held that the Surviving Spouse was entitled to a one-third fixed fractional share of this income. The court subsequently amended its ruling to reflect that the Surviving Spouse's share of this income should be determined using the changing fraction, rather than the fixed fraction, method of calculation. As an initial matter, we must determine whether the Surviving Spouse is entitled to a portion of the income received by the estate after the death of the Decedent. Assuming that this question is answered in the affirmative, we must then consider the proper method of calculating the Surviving Spouse's share of this income.

In *Merchants & Planters Bank v. Myers*, 644 S.W.2d 683 (Tenn. App. 1982), this Court was presented with facts somewhat analogous to those of the case at bar. On the date of his death, the decedent owned a one-half undivided interest in the Myers Chevrolet Building. *See id.* at 685. On tax returns filed by the estate, the executor estimated that the value of the decedent's interest in this property was $95,000.00. *See id.* at 686. For purposes of determining the surviving spouse's elective share, however, the parties stipulated that the value of the decedent's interest was

$120,000.00. *See id.* at 685. The trial court subsequently granted a petition to sell the decedent's interest in the Myers Chevrolet Building for $97,500.00, finding that this amount was equal to the "fair and reasonable market value" of the decedent's one-half interest. *Id.* at 686. Thereafter, the executor filed a petition seeking instructions from the trial court regarding the calculation of the surviving spouse's elective share. *See id.* at 685. The trial court ruled that the effective date for purposes of determining the surviving spouse's elective share was the date of the decedent's death. *See id.* at 686. Although this Court upheld the trial court's ruling on appeal, we further commented as follows:

> An adjustment is required when there is either appreciation or depreciation of assets prior to distribution of the spouse's elective share. . . .
>
> . . . .
>
> The evidence adduced at the partition hearing suggests the stipulated value of the Myers Chevrolet Building did not reflect the property's true value as the parcel was valued on tax returns at $95,000.00. The estate has been under administration for approximately four years and the widow should properly share in any gains or losses experienced prior to the distribution of her share. Upon remand, the executor is directed to take into account all gains and losses as of the time of the distribution and adjust the widow's elective share accordingly.

*Id.*

The issue considered by the court in *Myers* was whether appreciation and depreciation should be taken into account when calculating the surviving spouse's elective share. Thus, the *Myers* court did not specifically address whether income received during the administration of the decedent's estate should also be considered when calculating the surviving spouse's elective share. Nevertheless, we find that the rationale applied in *Myers* is equally applicable to the case at bar. The Decedent's estate has been under administration for nearly six years. As a result of various disputes among the parties, the Co-Executors have yet to distribute the Surviving Spouse's elective share. Like the court in *Myers*, we think that the Surviving Spouse should share in any gains or losses experienced by the Decedent's estate prior to the distribution of

her elective share.[6]  Such gains include income generated by property owned by the Decedent at the time of his death.  In light of the lengthy period of administration in the case at bar, we think this result is equitable for all interested parties.  This result also encourages the prompt administration of estates.  Thus, we conclude that the trial court properly determined that the Surviving Spouse is entitled to a share of the income received by the Decedent's estate prior to the distribution of her elective share.

When ruling that the Surviving Spouse's share of the aforementioned income should be determined using the changing fraction method of calculation, the trial court relied on the rationale set forth in *Estate of Greenfield*, 398 A.2d 983 (Pa. 1979).  In *Greenfield*, the trial court directed that the changing fraction method, rather than the fixed fraction method, should be used when allocating appreciation of the decedent's assets that occurred during the administration of the decedent's estate.[7]  *See id.* at 986.  The trial court explained the difference between the fixed fraction and the changing fraction method as follows:

> When the fixed fraction method is used, the principal is distributed and the gains and losses are charged according to the statutory percentage. . . .  In essence, the fixed fraction method treats the legacies and taxes which had been paid and the advance distributions which have been made as if they were still part of the corpus, when, in fact, they no longer are part of the estate.  As a result, in many instances, the non-elective portion shares in gains and losses in a proportion which did not in fact exist when the gains or losses were realized.
>
> [T]he changing fraction method allocates the gains and losses realized on the principal of an estate among those who are in fact owners of the principal at that time in the same proportions as their respective interests in the existing balance.

*Id.* at 985-86.[8]  On appeal, the Pennsylvania Supreme Court affirmed the ruling of the trial court,

---

[6]At least fourteen other jurisdictions also recognize that a surviving spouse is entitled to a share of the profits or income earned prior to the distribution of his or her elective share.  *See* Charles C. Marvel, Annotation, *Extent of Rights of Surviving Spouse Who Elects to Take Against Will in Profits of or Increase in Value of Estate Accruing After Testator's Death*, 7 A.L.R.4th 994-95 (1981)(citations omitted).

[7]The appellant in *Greenfield* did not challenge the trial court's ruling with respect to proper method of calculating income earned during the administration of the decedent's estate. *See Greenfield*, 398 A.2d at 986 n.3.

[8]The trial court in *Greenfield* illustrated the difference between these two methods of calculation as follows:

finding that the changing fraction method is equitable in that it provides for the allocation of growth in estate assets in proportion to the parties' actual interest in the fund that generated the growth. *See id.* at 987, 990.

When determining whether the changing fraction method of calculation should be utilized in the instant case, we must focus on the express language of section 31-4-101. On the date of the Decedent's death, this statute provided that a surviving spouse is entitled to an elective share equal to one-third of the decedent's net estate. *See* Tenn. Code Ann. § 31-4-101(a) (Supp. 1993). As stated above, the Surviving Spouse is also entitled to receive a one-third share of income generated by the Decedent's property prior to the distribution of her elective share. If the Surviving Spouse's share of this income was calculated using the changing fraction method, the Surviving Spouse would ultimately receive more than a one-third share of the Decedent's estate.[9] This result is contrary to the language of section 31-4-101. We agree with the Pennsylvania court in *Greenfield* that, under certain circumstances, the changing fraction method may be more equitable than the fixed fraction method of calculation. However, we also recognize that there are potential administrative difficulties associated with this method of distributing income. Despite our equitable concerns, we decline to adopt the changing fraction method in Tennessee. Accordingly, we reverse the trial court's ruling to the contrary.

---

Let us assume that the net probate estate of a decedent is $300,000 and the widow's statutory elective share is one-third. Thus, upon her election she becomes entitled to $100,000. If federal taxes and legacies are paid out of the non-elective share (as they must be) in the amount of $100,000, there remains in the estate $200,000 in principal. The elective and non-elective shares then are $100,000 each. However, if this principal increases by $150,000 and becomes $350,000, under the fixed fraction method, the widow receives one-third of the increase and her distributive share is $150,000. The non-elective share would get two-thirds of the increase, and its distributive share would be $200,000. Thus, the value of the non-elective share increased by 100% [a]nd the value of the elective share increased 50% [a]lthough both shares had exactly the same amount of money attributable to their respective shares in the estate. . . .

Under the changing fraction method, each would receive a proportionate share, i.e. $175,000. The method would also function if there were a loss of $150,000. Each would get $25,000, thus sharing in the loss proportionately.

*Greenfield*, 398 A.2d at 986 n.2.

[9]The Surviving Spouse conceded that, if the changing fraction method of calculation was used, she would be entitled to much more than a one-third share of the income received by the Decedent's estate prior to the distribution of her elective share.

In light of our conclusion that the Surviving Spouse's share of the income earned by the Decedent's estate should not be calculated using the changing fraction method, we find it unnecessary to discuss whether the Surviving Spouse's share of the administrative expenses associated with the generation of this income should similarly be determined using this method of calculation.

*Intellectual Property*

Finally, we consider whether and to what extent the Surviving Spouse is entitled to a share of income generated by the intellectual property in the Decedent's estate. The parties initially disagreed regarding the value of the Decedent's intellectual property and to whom this property should be awarded. In order to resolve these disputes, the trial court entered an order allowing the Surviving Spouse and the Children to determine the value of the Decedent's intellectual property through a bidding process. The Co-Executors had previously retained the firm of Loeb & Loeb to appraise the value of this property. Accordingly, Loeb & Loeb submitted a report to the Co-Executors estimating the fair market value of the Decedent's intellectual property as of June 1995. Pursuant to the trial court's order, the bidding would start at the Loeb & Loeb appraisal price and would continue to increase by increments of $1,000.00 until either the Surviving Spouse or the Children ceased bidding. The party placing the highest bid would receive the Decedent's intellectual property in kind and the amount of the winning bid would be charged against that party's share of the Decedent's estate. At the conclusion of this process, the Children had submitted the highest bid. The Children subsequently filed a motion requesting the trial court to direct that the Surviving Spouse was not entitled to receive any of the income generated by the Decedent's intellectual property. This motion was denied by the trial court.

The Loeb & Loeb appraisal took into account the estimated future income that the Decedent's intellectual property was expected to generate over a twenty year period. Thus, the value assigned to this property through the trial court's bidding process also encompasses this future income. The Children argue on appeal that the Surviving Spouse should not be permitted to receive a share of the income generated by this property during the administration of the Decedent's estate. We agree. The Surviving Spouse is entitled to receive as part of her elective share assets equal to

one-third of the value assigned to the Decedent's intellectual property. Included in this value is an amount equal to the projected future income that this property is expected to earn over the next twenty years. If the Surviving Spouse is also permitted to receive a one-third share of the income received by the Decedent's estate during its administration, she would effectively be receiving the same income through two separate avenues. We decline to approve such a method of distribution that allows the Surviving Spouse to take a "double-dip" of the income generated by the Decedent's intellectual property. Consequently, we reverse the trial court's ruling with regard to this matter.[10]

### *Conclusion*

For the reasons set forth above, we conclude (1) that the proceeds the insurance policies that were paid directly to the Decedent's ex-wife should not be included in the net estate, (2) that, when calculating the net estate, the value of the Decedent's property should not be reduced by the amount of indebtedness secured by this property, (3) that the Surviving Spouse is entitled to a share of the income received by the Decedent's estate prior to the distribution of the elective share, (4) that the Surviving Spouse's share of this income should be determined using the fixed fraction, rather than the changing fraction, method of calculation, and (5) that the Surviving Spouse is not entitled to receive a share of the income earned by the Decedent's intellectual property after June of 1995.

The ruling of the trial court is thus affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. The costs of this appeal are taxed to the Co-Executors as representatives of the Decedent's estate, for which execution may issue if necessary.

_____
FARMER, J.

_____

_____

[10]In light of our ruling, we are compelled to offer guidance to the Co-Executors regarding the proper method of distributing the income earned by the intellectual property during the administration of the Decedent's estate. The Loeb & Loeb appraisal estimated the value of this property as it existed in June of 1995. Thus, any income generated by the Decedent's intellectual property between the Decedent's date of death and June of 1995 should be distributed in the same manner as all other income received by the estate. Any income earned by the intellectual property after June of 1995, however, should be set aside and ultimately distributed to the recipient of the Decedent's intellectual property rights.

HIGHERS, J. (Concurs)


_____
CANTRELL, J. (Concurs)