IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 21, 2020

IN RE: ESTATE OF EDWARD ALAN LADD ET AL.

Appeal from the Chancery Court for Rhea County
No. 1922P        Melissa T. Blevins-Willis, Chancellor

_____

No. E2019-00484-COA-R3-CV
_____

In this estate matter, the trial court determined that when calculating the value of the decedent's net estate for purposes of determining his widow's elective share, insurance proceeds and retirement benefits that were distributed via beneficiary designation forms and were not distributed pursuant to the decedent's last will and testament would not be included in the net estate value pursuant to Tennessee Code Annotated § 31-4-101(b). The widow's estate has appealed. We affirm the trial court's interpretation of Tennessee Code Annotated § 31-4-101(b) (2015) and the court's method of calculating the widow's elective share by declining to include any assets that passed outside probate in the value of the decedent's net estate. We vacate, however, the trial court's valuation of the decedent's real property, and we remand this issue to the trial court for further determination. Once such value has been established, it should be incorporated into the trial court's calculation of the widow's elective share, utilizing the same methodology as was employed by the court in the original calculation. We decline to award attorney's fees to the widow's estate on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Joshua H. Jenne, Cleveland, Tennessee, for the appellant, Estate of Debra Burger Ladd.

Howard L. Upchurch, Pikeville, Tennessee, for the appellee, Angela Yvonne Aikman.

Rebecca L. Hicks, Dayton, Tennessee, for the appellee, Estate of Edward Alan Ladd.

**OPINION**

## I. Factual and Procedural History

The decedent, Edward Alan Ladd ("Decedent"), died testate on June 28, 2009. Decedent was survived by his wife, Debra Burger Ladd ("Wife"), as well as his three adult daughters from a previous marriage: Angela Y. Aikman, Tara V. Boles, and Sonja R. Ladd. Decedent and Wife were married on August 31, 1997, and remained married until Decedent's death in 2009.

In March 2009, with knowledge of his impending death, Decedent consulted with Knoxville attorney A. Thomas Monceret concerning estate planning. On March 22, 2009, Decedent executed a quitclaim deed ("the Quitclaim Deed") prepared by Mr. Monceret, which conveyed title to a parcel of improved real property located at 434 Lake Hills Circle, Spring City, Tennessee, to Ms. Aikman. Decedent retained a life estate interest in the real property. On the same date, Decedent executed a Last Will and Testament ("Will"), also prepared by Mr. Monceret. Decedent apparently did not inform Wife of his consultation with Mr. Monceret or his execution of the Quitclaim Deed or Will.

Subsequently, on May 1, 2009, Decedent changed his retirement benefit designation with his previous employer, Tennessee Valley Authority ("TVA"), such that following his death, 75% of his payments would continue to be distributed to Wife, rather than 25%, as was the previous designation. Under the 75% option, Wife received $2,094.07 per month from June 2009 until the time of her death in 2012. This death benefit, and other employment-related benefits, such as distribution of Decedent's 401(k) account and life insurance benefits, were controlled by beneficiary designation forms executed by Decedent prior to his death.

On July 10, 2009, Ms. Aikman filed a petition to probate Decedent's Will. According to the terms of his Will, Decedent bequeathed to Wife "all proceeds of [his] TVA Retirement Account," while the "rest, residue, and remainder" of his estate were bequeathed to his three adult children in equal shares. The trial court entered an order that same day admitting Decedent's Will to probate and naming Ms. Aikman as executrix of Decedent's estate in accordance with the Will's terms.

On March 26, 2010, Wife filed a petition in the probate action, alleging that Decedent's conveyance of real property to Ms. Aikman on March 22, 2009, was a fraudulent conveyance designed to defeat Wife's elective share and that the property should be brought back into Decedent's estate. Additionally, Wife filed a "Petition for Specific Property, Year's Support Allowance, Elective Share, and Application for Homestead." Following Wife's subsequent death on July 24, 2012, the Estate of Debra Burger Ladd ("Wife's Estate") was substituted as the petitioner.

On February 19, 2015, Wife's Estate filed a motion for partial summary judgment regarding the issues set forth in the petition seeking to set aside the conveyance of real estate. The trial court denied the motion by order dated August 26, 2015. The trial court set the case for final hearing on April 25, 2018, at which time the parties stipulated that the remaining issues involved questions of law. According to the parties' briefs, such stipulation included an acknowledgement by counsel for Decedent's estate and for Ms. Aikman that the value of the real property conveyed to Ms. Aikman via the Quitclaim Deed would be included in the calculation of the value of Decedent's net estate. *See* Tenn. Code Ann. § 31-1-105 (2015) ("Any conveyance made fraudulently to children or others, with an intent to defeat the surviving spouse of the surviving spouse's distributive or elective share, is, at the election of the surviving spouse, includable in the decedent's net estate under § 31-4-101(b), and voidable to the extent the other assets in the decedent's net estate are insufficient to fund and pay the elective share amount payable to the surviving spouse under § 31-4-101(c).").

Accordingly, in lieu of an evidentiary hearing, the parties submitted written briefs concerning the proper manner of calculation of Wife's elective share. All parties included the value of the real estate in their proposed calculations. The chancellor subsequently entered an order on August 7, 2018, wherein the trial court, *inter alia*, adopted the proposed calculation of Wife's elective share as set forth in a memorandum of law submitted by Ms. Aikman.[1]

The trial court held that when determining the value of Decedent's net estate for purposes of calculating Wife's elective share, items that were "dealt with by operation of law" and did not come within the disposition of Decedent's Will would not be included in the value of Decedent's net estate. Specifically, the chancellor adopted Ms. Aikman's computation of Decedent's net estate, pursuant to Tennessee Code Annotated § 31-4-101(b), which did not include the value of his life insurance proceeds, 401(k) account, or retirement/pension benefits. Following entry of a final order, Wife's Estate timely appealed.

## II. Issues Presented

Wife's Estate presents the following issues for our review, which we have restated slightly:

---

[1] We note that at the time of the August 7, 2018 order, Chancellor Jeffrey Stewart was presiding over this matter. Following his retirement, Chancellor Blevins-Willis presided over the matter and entered the final order.

1.   Whether the trial court erred in its interpretation of Tennessee Code Annotated § 31-4-101 and in the valuation of Decedent's net estate for the purposes of calculating Wife's elective share.

2.   Whether Wife should be awarded attorney's fees incurred on appeal.

## III. Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). We review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006).

Statutory interpretation is a question of law, which we review *de novo* with no presumption of correctness. *See In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009). Our Supreme Court has summarized the principles involved in statutory construction as follows:

When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998). Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of*

*Chattanooga*, 172 Tenn. 505, 114 S.W.2d 441, 444 (1937). We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).

*Id*. at 613-14.

## IV. Calculation of Wife's Elective Share

The computation of a surviving spouse's elective share is governed by Tennessee Code Annotated § 31-4-101, which provides in pertinent part:

(a)(1) The surviving spouse of an intestate decedent who elects against taking an intestate share, or a surviving spouse who elects against a decedent's will, has a right of election, unless limited by subsection (c), to take an elective-share amount equal to the value of the decedent's net estate as defined in subsection (b), determined by the length of time the surviving spouse and the decedent were married to each other, in accordance with the following schedule:

| If the decedent and the surviving spouse were married to each other: | The elective-share percentage is: |
| --- | --- |
| * * * | |
| 9 years or more | 40% of the net estate |
| * * * | |

(b) The value of the net estate includes all of the decedent's real property, notwithstanding § 31-2-103, and personal property subject to disposition under the decedent's will or the laws of intestate succession, reduced by the following: secured debts to the extent that secured creditors are entitled to realize on the applicable collateral, funeral and administration expenses, and award of exempt property, homestead allowance and year's support allowance. . . .

(c) After the elective-share amount has been determined in accordance with subsections (a) and (b), the amount payable to the surviving spouse by the estate shall be reduced by the value of all assets includable in the decedent's gross estate that were transferred, or deemed transferred, to the surviving spouse or that were for the

benefit of the surviving spouse, but excluding the homestead allowance, exempt property and year's support allowance. For purposes of this subsection (c), the decedent's gross estate shall be determined by the court in the same manner as for inheritance tax purposes pursuant to title 67, chapter 8, part 3, except that the value of any life estate or trust for the lifetime benefit of the surviving spouse shall be actuarially determined.

Decedent and Wife had been married for twelve years at the time of Decedent's death. Therefore, the parties agree that Wife's elective share would have been forty percent of Decedent's net estate. The parties disagree, however, about the proper method of calculating the value of Decedent's net estate pursuant to subsection (b).

The trial court adopted the calculation of the value of Decedent's net estate as provided by Ms. Aikman. This valuation included the real property conveyed to Ms. Aikman via Quitclaim Deed, which the court valued at $185,000.00, and Decedent's personal property and bank accounts, collectively valued at $71,589.83, for a total net estate value of $256,589.83. Wife's Estate argues that Decedent's net estate value should also include "all proceeds of [Decedent's] T.V.A. Retirement Account" because Decedent's Will purported to bequeath such asset(s) to Wife. Following our review of the statute's language and prior decisions from this Court, we agree with the trial court's method of calculating the value of Decedent's estate.

Tennessee Code Annotated § 31-4-101(b) provides in relevant part that Decedent's net estate should include "all of the decedent's real property . . . and personal property subject to disposition under the decedent's will or the laws of intestate succession." Wife's Estate asserts that Decedent's net estate value should have included all of the assets comprising Decedent's "T.V.A. Retirement Account," including Decedent's 401(k), pension and death benefits, and TVA life insurance benefits, all of which were paid via beneficiary designations following Decedent's death and none of which were administered through the probate process. We disagree.

This Court has previously held that "life insurance proceeds that were paid directly to [the beneficiary] should not be included in the Decedent's net estate." *See In re Estate of Jenkins*, 8 S.W.3d 277, 281 (Tenn. Ct. App. 1999), *perm. app. denied* (Tenn. Nov. 22, 1999). In so ruling, this Court explained that because such funds were never deposited into the estate's bank account and likewise were never subject to the control of the executors, they "never became part of the Decedent's estate and thus were not 'subject to disposition under the terms of the decedent's will' as required by section 31-4-101(b)." *See id.* at 282; *see also In re Estate of Morris*, 104 S.W.3d 855, 861 (Tenn. Ct. App. 2002), *perm. app. denied* (Tenn. Mar. 17, 2003) (determining that the decedent's net

estate would not include life insurance proceeds that were paid to the surviving spouse via beneficiary designation outside of the probate proceedings).[2]

Because Decedent's pension and death benefits, life insurance proceeds, and the balance of his 401(k) account were all distributed to beneficiaries based on Decedent's designations separate from his Will, these assets never became part of his estate and were not subject to disposition under the terms of his Will. In other words, the distribution of these assets was controlled by beneficiary designations rather than by the terms of Decedent's Will. Ergo, these assets were properly excluded from the valuation of Decedent's estate.

Wife's Estate relies on this Court's opinion in *In re Estate of Soard*, 173 S.W.3d 22 (Tenn. Ct. App. 2005), when arguing that we should reach a different valuation of Decedent's net estate in this matter. However, we find *Soard* to be inapplicable here. In *Soard*, the issue presented dealt with the proper interpretation of Tennessee Code Annotated § 31-4-101(c), as it existed at that time, and whether the "value of the surviving spouse's exempt property, homestead allowance, and year's support" could be deducted from the surviving spouse's elective share. *See id*. at 25.[3] The *Soard* Court did affirm, however, that the language of Tennessee Code Annotated § 31-4-101(b) contemplates "assets that pass in probate" as opposed to "those that pass outside of probate." *See id*. Based on the plain language of the statute, we affirm the trial court's decision to exclude from the valuation of Decedent's estate any assets that passed to beneficiaries outside of probate and for which disposition was not controlled by Decedent's Will. *See* Tenn. Code Ann. § 31-4-101(b).

Wife's Estate also contends that the trial court improperly valued the real property included in the valuation of Decedent's net estate. Specifically, Wife's Estate argues that the real property had appreciated in value by the time of the April 2018 hearing, such that the property was worth $258,700.00 rather than $185,000.00 as found by the trial court. In its June 4, 2018 oral ruling, which was incorporated into the August 7, 2018 order, the trial court determined that the $185,000.00 value, gleaned from an appraisal performed in 2015, was the proper value because the 2015 appraisal was performed closer in time to the date of Wife's death.

As this Court has previously explained, although the "rights elected are regarded as vesting at, and therefore dating back to, the time of the death of the testator," the

---

[2] We find Wife's Estate's reliance on *Phipps v. Watts*, 781 S.W.2d 863, 866 (Tenn. Ct. App. 1989), to be unavailing. In *Phipps*, the insurance proceeds at issue were paid to the estate as beneficiary and thus became part of the estate's property. *See id*.

[3] We note that Tennessee Code Annotated § 31-4-101(c) was amended in July 2007 to specifically address this question. *See* 2007 Tenn. Pub. Acts, Ch. 13, § 2 (H.B. 418).

"electing spouse shares in the losses or gains, as the case may be, engendered by changes in the value of the estate assets up to the time of distribution." *Merchants & Planters Bank v. Myers*, 644 S.W.2d 683, 686 (Tenn. Ct. App. 1982) (emphasis added). This approach was followed by this Court in *In re Estate of Jenkins*, wherein this Court elucidated:

> The issue considered by the court in *Myers* was whether appreciation and depreciation should be taken into account when calculating the surviving spouse's elective share. Thus, the *Myers* court did not specifically address whether income received during the administration of the decedent's estate should also be considered when calculating the surviving spouse's elective share. Nevertheless, we find that the rationale applied in *Myers* is equally applicable to the case at bar. The Decedent's estate has been under administration for nearly six years. As a result of various disputes among the parties, the Co-Executors have yet to distribute the Surviving Spouse's elective share. Like the court in *Myers*, we think that the Surviving Spouse should share in any gains or losses experienced by the Decedent's estate prior to the distribution of her elective share. Such gains include income generated by property owned by the Decedent at the time of his death. In light of the lengthy period of administration in the case at bar, we think this result is equitable for all interested parties. This result also encourages the prompt administration of estates.

*In re Estate of Jenkins*, 8 S.W.3d at 286 (footnote omitted).

In the action at bar, Wife's Estate did not receive a determination of the value of her elective share until the Court's August 7, 2018 order. As *Myers* and *Estate of Jenkins* make clear, the value of the asset should be determined as of the date of distribution, so that the surviving spouse can share in any gains or losses. *See In re Estate of Jenkins*, 8 S.W.3d at 286; *Myers*, 644 S.W.2d at 686. Ms. Aikman has asserted, however, that the increase in the real property's value is largely due to her efforts to renovate and improve the property at her own expense rather than normal appreciation.

The trial court made no factual findings concerning the value of the real property aside from determining that the 2015 appraisal value should be adopted. We determine that this issue must therefore be remanded to the trial court for the limited purpose of establishing the value of the real property at the time of distribution of Wife's elective share, while also considering only the ordinary appreciation in value as opposed to an increase in value due to improvements made by Ms. Aikman using her own funds. As such, although we affirm the trial court's method of calculation of Decedent's net estate for the purpose of computing Wife's elective share, we vacate the trial court's determination of value concerning the real property. Upon remand, the trial court shall consider such evidence as is necessary, as outlined above, to make the proper

determination of value concerning the real property. Once such value has been assigned, it should be incorporated into the trial court's calculation of Husband's net estate for the purpose of computing Wife's elective share, utilizing the same methodology as was employed by the court in the original calculation.

## V. Attorney's Fees on Appeal

Finally, Wife's Estate seeks an award of attorney's fees on appeal for equitable reasons. "An award of appellate attorney's fees is a matter within this Court's sound discretion." *Moran v. Willensky*, 339 S.W.3d 651, 666 (Tenn. Ct. App. 2010). "In considering a request for attorney's fees on appeal, we consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the appeal was taken in good faith, and any other equitable factors relevant in a given case." *Id*. Utilizing our discretion, we decline to grant an award of fees to Wife's Estate on appeal.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's interpretation of Tennessee Code Annotated § 31-4-101 and its method of calculating Decedent's net estate, for the purpose of computing Wife's elective share, with the exclusion of any assets that passed outside probate in the value of Decedent's net estate. We vacate, however, the trial court's valuation of Decedent's real property previously transferred to his daughter, and we remand this issue to the trial court for further determination. Once such value has been established, the trial court should incorporate the value into its calculation of Wife's elective share, utilizing the same methodology as was employed by the court in the original calculation. We further decline to award attorney's fees to Wife's Estate on appeal. Costs on appeal are assessed one-half to the appellant, Estate of Debra Burger Ladd, and one-half to the appellee, Angela Yvonne Aikman.

_____
THOMAS R. FRIERSON, II, JUDGE