IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 17, 2002 Session

## IN RE: ESTATE OF EDWARD HILTON MORRIS, Deceased
## ROGER CLAYTON MORRIS v. LOLA JANE MORRIS

**A Direct Appeal from the Chancery Court for Gibson County**
**No. 15061-P    The Honorable George R. Ellis, Chancellor**

_____

**No. W2002-00001-COA-R3-CV - Filed October 24, 2002**

_____

Widow, electing to take against husband's will, filed a petition for year's support, exempt property, elective share, and homestead. Because the estate had no personal property with which to satisfy claims against the estate and the widow's benefits, widow filed a petition to sell the real property to provide such funds. The trial court declined to order a sale of the real property, contingent upon the executor paying the claims against the estate, exclusive of the claimed widow's benefits. Widow appeals. We affirm in part, reverse in part, and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Sam J. Watridge, Humboldt, For Appellant, Lola Jane Morris

Harold E. Dorsey, Humboldt, For Appellee, Roger Clayton Morris

### OPINION

This case involves a dispute over a widow's elective share, homestead, and year's support as they are affected by life insurance and pension payments that pass to the widow outside the estate. There is no dispute as to exempt property. Edward Hilton Morris ("Decedent") died testate on August 22, 2000. The Estate of Edward Hilton Morris (the "Estate") was opened on September 1, 2000 and a will dated June 20, 1994 was probated. Decedent's son, Roger Clayton Morris ("Appellee," or "Executor") was named Executor. Decedent's widow, Lola Jane Morris ("Appellant," "Widow," or "Mrs. Morris") elected against the will and filed a petition for elective share, year's support, exempt property, and homestead. An Agreed Order substituting Last Will & Testament was entered on May 23, 2001, which replaced the June 20, 1994 will with a subsequent will dated September 6, 1995. On May 29, 2001, Mrs. Morris filed a Petition to Sell Real Property

because the assets of the Estate were insufficient to pay the claims against the Estate and the surviving spouse's entitlements of homestead, year's support, and elective share. Appellee filed a Response to Petition to Sell Real Property on June 18, 2001. Before hearing the Petition to Sell Real Estate, the trial court ordered a complete accounting of assets and inventory of the Estate. The accounting was filed with the court on July 2, 2001 and listed the value of the real property located at 9 Dollar Road in Humbolt (the "Property") as $58,000. The accounting also indicated that Mrs. Morris received $25,000 from a life insurance policy and a monthly pension benefit of $539.19 for her lifetime. The personal property of the Estate was ordered to be turned over to Mrs. Morris on October 24, 2001. On October 20, 2001, Mrs. Morris renewed her Motion to Sell Real Property. All motions were heard on July 2, 2001. The parties agreed that there was no personal property left in the Estate and that Mrs. Morris was entitled to all exempt property. On the issues of homestead, year's support, and elective share, Appellant took the position that the insurance proceeds and pension payments she received would have no effect on her entitlement to homestead, year's support or elective share and that the real property should be sold since there was no more personalty left from which to satisfy her claims. Appellee asserted that receipt of the insurance proceeds and pension more than satisfied any entitlements to homestead, year's support, and elective share due Mrs. Morris and that there was no need to sell the real property because nothing further was owed, but, if the trial court found that any further compensation was owed to Mrs. Morris, the Appellee asserted that the Estate should have the option of satisfying those obligation without having to sell the Property. The record indicates that, although the trial court held that the homestead, year's support and elective share claims of Mrs. Morris were valid, the court stopped short of mandating the sale of the real estate. Rather, the court put the responsibility of paying the debts and Widow's claims on the Estate and indicated that, if the Estate could not satisfy its obligations by October 5, 2001, the court would order the sale of the real property. A subsequent hearing was held on November 21, 2001 for the purpose of determining whether the Estate had paid its obligations. At the time of this hearing, the real property had not been sold. However, the Executor indicated that he was willing and, in fact, had secured a loan to satisfy the obligations of the Estate. It is obvious from the transcript of the November hearing that the trial court's exact ruling was not clear to either party. The final Order of the court, filed December 3, 2001, reflects this ambiguity. The Order reads:

> THIS CAUSE came on to be heard on the 2nd day of July, 2001, in Trenton, Tennessee, before the Honorable George R. Ellis, Chancellor, upon the Petition of the Surviving Spouse for an elective share, exempt property, homestead, year's support, Motion to Sell Real Property and the widow's claim for funeral expenses, and for good cause shown
>
> THEREFORE IT IS HEREBY ORDERED, ADJUDGED AND DECREED:
>
> 1. That Lola Morris is the surviving spouse of Edward Morris who died August 22, 2000.

2. That the surviving spouse is entitled to all the personal property, the automobiles, the furniture and all tangible property.

3. That there are claims against the estate in the approximate amount of Twenty-thousand dollars ($20,000.00).

4. That the claim of Lola Morris against the estate for Six Thousand two dollars and fifty seven cents ($6,002.57) for the funeral expenses of the decedent Edward Morris is approved and the objection to the claim overruled.

5. That payment of homestead and year's support and elective share are contingent upon the real property being sold because there is no personal property in the estate.

6. That the Motion to Sell the Real Property is a valid motion and, unless the executor can pay off the claims against the estate the real property will be sold.

7. If the real property is sold, there will be personal property available from which to pay homestead, year's support and elective share.

Widow appeals and presents one issue for review as stated in her brief:

If the personal property of an estate is insufficient to pay claims against the estate, may the Executor refuse to sell the real property, transfer it to himself and deny payment to the surviving spouse of year's support, homestead and elective share?

At the outset, we note that the order appealed is at the very least questionable as a final order appealable as of right. However, we are dealing with a very modest estate that should not be encumbered with unnecessary attorney fees and expenses, if at all possible. The parties have interpreted the court's order in such a manner as to allow a final resolution on this appeal and, in the interest of the Estate and judicial economy, we will consider the order final.

In addition to the Widow's issue on appeal, the Estate has presented four issues as stated in its brief:

1. Must the surviving spouse's elective share be offset by property passing outside of the estate?

2. Must any compensation based upon the year's support statute be recovered from personal property of the estate?

3. May benefits provided by the Homestead statute be withdrawn from personal property of the estate?

4. May the Executor and beneficiaries personally pay estate debts to avoid the sale of real property of the estate?

Turning to the Widow's first issue, it is abundantly clear that real estate may be sold to provide funds to pay claims against the estate if there are insufficient personal assets to satisfy the claims. *See* T.C.A. § 30-2-402. Thus, to answer the issue as phrased, the Executor cannot defeat the payment of claims and the Widow's entitlements by failure to subject the real property for payment thereof. However, the sale of real estate may be by public or private sale and it is largely within the discretion of the probate court as to the terms and provisions of such sale. In 2 Harry Phillips & Jack W. Robinson, Pritchard on Wills and Administration of Estates Embracing the Law and Practice in Tennessee § 908 (5th ed. 1983 & Supp. 2002), it is stated:

### § 908. Private sales; confirmation.

The Act [§ 30-2-402] authorizes either public sales or private sale of real estate for the payment of debts: "The court is also empowered, in a like proceeding, to ratify contracts of private sale and to authorize the consummation of the same by the personal representative."

In many instances, a private sale of real estate may be more desirable, especially when the fair market value has been established by a competent appraisal and the sale price of the real estate equals or exceeds the appraised value. Expenses may be minimized as well as the risk that a public sale might not produce an adequate sale price.

If all valid claims and obligations of the Estate are satisfied, then obviously it is not necessary for the real property to be sold. For example, if a devisee of the real estate undertakes to pay all valid claims and obligations of an insolvent estate, the devisee may keep the real estate and the estate itself can be validly closed by the probate court. Thus, the answer to this issue also serves to answer the Estate's fourth issue.

We will now consider the Estate's remaining issues, which we have rephrased as follows:

1. Whether surviving spouse is entitled to homestead allowance from the Estate.

2. Whether surviving spouse is entitled to year's support from the real property of the Estate.

3. Whether surviving spouse's elective share must be offset by property passing outside the Estate.

## Whether surviving spouse is entitled to homestead allowance from the Estate

T.C.A. § 26-2-301(a) establishes Mrs. Morris' right to homestead as follows:

> An individual, whether a head of family or not, shall be entitled to a homestead exemption upon real property which is owned by the individual and used by the individual or the individual's spouse or dependent, as a principal place of residence. The aggregate value of such homestead exemption shall not exceed five thousand dollars ($5,000)...

*Id.*

Homestead in Tennessee is a constitutional right:

> There shall be a homestead exemption from execution in an amount of five thousand dollars or such greater amount as The General Assembly may establish.

**TENN. CONST.** art. XI, § 11

Although Mrs. Morris is entitled to a $5,000 homestead from the Estate, there is no legislative mandate that the Property be sold or partitioned in order to satisfy this allowance. T.C.A. § 30-2-209 provides that:

> If real estate is so situated that homestead cannot be set apart, as herein provided, then the realty shall be sold and five thousand dollars ($5,000) of the proceeds invested in real estate, under the direction of the court having jurisdiction to be held as homestead subject to the law governing homestead, *or if the court deems it more desirable and practical, it may order the payment of five thousand dollars ($5,000) in cash or other personal property outright. . . .*

*Id.* (emphasis added)

Appellee asserts that Mrs. Morris' homestead allowance has been satisfied by her receipt of the $539.19 per month pension and the $25,000 life insurance payment. Appellee argues that the pension and the life insurance proceeds fall under the definition of "personal property" found in T.C.A. § 30-2-209. There is nothing in the statute to indicate that the homestead allowance is to be reduced or otherwise affected by any assets coming to the Widow outside the Estate.

Mrs. Morris is entitled to the $5,000 homestead allowance, and this can be accomplished by a cash payment in lieu of sale. This is a valid obligation of the Estate, which must be satisfied to avoid the sale of the real property.

### Whether surviving spouse is entitled to year's support from the real property of the Estate

T.C.A. § 30-2-102 governs year's support allowance and provides as follows:

> (a) In addition to the right to homestead, an elective share under title 31, chapter 4, and exempt property, the surviving spouse of an intestate, or a surviving spouse who elects to take against a decedent's will, is entitled to a reasonable allowance in money out of the estate for such surviving spouse's maintenance during the period of one (1) year after the death of the spouse, according to such surviving spouse's previous standard of living, taking into account the condition of the estate of the deceased spouse. The court may consider the totality of the circumstances in fixing the allowance authorized by this section, including assets which may have passed to the spouse outside probate.
>
>       *                   *                   *
>
> (c) The court may authorize the surviving spouse to receive any personal property of the estate in lieu of all or part of the money allowance authorized by this section, and in any case where the court makes an allowance in money, the surviving spouse shall be entitled to select and receive any personal property of the estate, of a value not exceeding the allowance in money, which shall be in lieu of an which value shall be credited against the allowance.

*Id.*

Although Mrs. Morris is entitled to year's support, it is an established principle in Tennessee that year's support is not chargeable against the real property of an estate. ***In re Estate of Gray***, 729 S.W.2d 668, 672 (Tenn. Ct. App. 1987) (citing ***Cate v. Cate***, 43 S.W. 365

(Tenn. Ch. App. 1897). Since there is no dispute that the Estate at issue in this case consists only of real property and exempt property, there is no personalty left from which to carve out a year's allowance. Consequently, surviving spouse is entitled to no further compensation under T.C.A. § 30-2-101.

### Whether surviving spouse's elective share must be offset by property passing outside the Estate.

It is undisputed that Mrs. Morris was the beneficiary of a $25,000 life insurance policy and that she receives $539.19 per month from a pension plan at Eaton Axle.[1] Under T.C.A. § 31-4-101 (a)(1), Appellant is entitled to 10% of the net estate as her elective share. Calculation of the net estate is pursuant to T.C.A. §31-4-101(b), which provides:

> The value of the net estate includes all of the decedent's real and personal property subject to disposition under the provisions of the decedent's will or the laws of intestate succession, reduced by the following: secured debts to the extent that secured creditors are entitled to realize on the applicable collateral, funeral and administration expenses, and award of exempt property, homestead allowance and year's support allowance.

*Id.*

Using this formula, the net estate is calculated as follows:

| | |
|---|---|
| Real Estate | $58,000[2] |
| Personal Property | $18, 668[3] |
| Total | $76,668 |

Less Deductions:
Secured Debts          $18,384.03[4]

---

[1] The value of the pension plan at Eaton Axle was calculated based upon the plan's payout of $539.19 per month X 12 months per year X 33.54 years = $217,013.19. The life expectancy of Mrs. Morris is 33.54 years. The life expectancy calculation is based upon mortality tables in Volume 13 (Mortality Table III) of the T.C.A. Mrs. Morris was 45 years old at the time of this calculation.

[2] From the record, it appears that the $58,000 value of the Property is taken from the tax assessor's information and is undisputed.

[3] This number is taken from the Executor's accounting as provided in Exhibit 4.

[4] This number reflects only the secured debts filed against the Estate. According to the record, these debts included a $15,155.76 mortgage with Union Planters, and $3,228.27 vehicle loan with Union Planters. Additional
(continued...)

|                      |                        |
|----------------------|------------------------|
| Administrative Fees  | $5,788.73[5]           |
| Exempt Property      | $18,668[6]             |
| Homestead            | $5,000[7]              |
| Year's Support       | $0.00[8]               |
| Total Deductions     | $47,840.76             |

**Net Estate:** $76,668 (total of real and personal property)
less $47,840.76 (total deductions)
**$28,827.24**

Under T.C.A. §31-4-101(a)(1), Mrs. Morris is entitled 10% of the net estate as her elective share:

**Elective Share:** $28,827.24 (net estate as calculated above)
Times 10%
**$2,882.72**

However, the elective share calculation is not complete until we apply T.C.A. §31-4-101(c), which provides that:

> After the elective-share amount has been determined in accordance with the foregoing subsections (a) and (b), the amount payable to the surviving spouse by the estate shall be reduced by the value of all assets includable in the decedent's gross estate which were transferred, or deemed transferred, to the surviving spouse or which were for the benefit of the surviving spouse. For the purposes hereof, the decedent's gross estate shall be determined by the court in the same manner as for inheritance tax purposes pursuant to T.C.A. §§ 67-8-301 et. seq., except that the value of any life estate or trust for

---

[4] (...continued)
unsecured claims were filed against the Estate.

[5] There is no dispute in the record as to administrative fees. This number is taken from Appellee's brief.

[6] There is some dispute in the record as to whether Appellant received all of the personalty in form of exempt property. Appellant did receive some portion of the personalty of the Estate. In our determination of whether the Appellant is entitled to additional monies under the elective share statute, the end result is not affected by deducting the entire amount of $18,668 as exempt property or by deducting nothing for exempt property from the net estate. Since we include the calculations only for purposes of clarification, we will leave the full deduction in place.

[7] As discussed *supra*.

[8] As discussed *supra*.

the lifetime benefit of the surviving spouse shall be actuarially determined.

*Id.*

The issue of whether the Appellant's elective share should be reduced by the amount of the life insurance and pension that passed outside the Estate depends upon whether the insurance proceeds and/or pension are part of the gross estate. Because we find that the insurance proceeds are included in the gross estate, we pretermit discussion of whether the pension payments are also part of the gross estate.

T.C.A. § 67-8-306 provides that:

> (a) If the decedent was a resident of this state, *there shall be included in the gross estate the proceeds of insurance policies payable to named beneficiaries*, or to the decedent's estate, or in such manner as to be subject to claims against the decedent's estate and to distribution as a part thereof.
>
> (b) This section shall include the proceeds of insurance policies commonly known as "paid-up contracts" or "investment contracts" or "annuity contracts" or similar types or forms of policies, the surrender value of which was subject to the control of the decedent prior to death.
>
> (c) Where life insurance, the proceeds of which are under the control of the decedent, is left by the decedent in such manner that the proceeds thereof cannot be subjected to the payment of the decedent's debts and where the proceeds of such insurance are received by beneficiaries thereof and are not subjected to the debts of the decedent, the fact that the decedent may have been insolvent and that a portion of the decedent's debts may remain unpaid shall not affect the liability for inheritance tax upon such insurance.

*Id.* (emphasis added).

From the clear language of this statute, the insurance proceeds of $25,000 received by Mrs. Morris are included in the gross estate. Turning back to T.C.A. § 31-4-101(c), we must reduce the elective share of $2,882.72 by the $25,000 insurance paid to the surviving spouse. Notwithstanding the question of whether the pension amount should also be deducted from the elective share as part of the gross estate, Appellant has exhausted her elective share and is entitled to no more compensation under T.C.A. § 31-4-101.

For the foregoing reasons, we reverse the order of the trial court to the extent that it holds the payment of homestead is contingent upon the sale of the real property and affirm the order of the trial court to the extent that it grants the Appellant $5,000.00 homestead. We reverse the order of the trial court to the extent that it grants any further elective share to the Widow and to the extent that it purports to grant a year's support to the Widow out of real property. The order of the trial court is, in all other respects, affirmed. The case is remanded to the trial court for further proceedings and payment of all valid obligations and claims of the Estate and the closing thereof. Costs of the appeal are assessed one-half to the Appellant, Lola Morris, and her surety, and one-half to the Appellee, Roger Clayton Morris, Executor of the Estate.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.