IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 21, 2004 Session

IN RE: ESTATE OF FRANK SOARD

Appeal from the Probate Court for Blount County
No. 02-22-57     Hugh E. Delozier, Jr., Judge

No. E2004-01434-COA-R3-CV

This case involves a dispute between a widow and the personal representative of her husband's estate. The parties differ as to the correct interpretation of Tenn. Code Ann. § 31-4-101 (2001), the statute setting forth the criteria pursuant to which a surviving spouse's elective share is computed. The trial court adopted the estate's construction of the statute and subtracted the widow's exempt property, homestead allowance, and year's support allowance from the value of her percentage share of the net estate in arriving at the elective-share amount to which she is entitled. We disagree with the trial court's interpretation of the statute. Accordingly, we reverse the judgment of that court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court
Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Robert N. Goddard, Maryville, Tennessee, for the appellant, Sarah Soard.

Martha S. L. Black, Maryville, Tennessee, for the appellee, Estate of Frank Soard.

**OPINION**

I.

The parties filed a stipulation of material facts in the trial court. The stipulation provides, in pertinent part, as follows:

Frank Soard died on the 14th day of July, 2003.

Frank Soard was survived by his wife, Sarah Soard, whom he had married on the 24th day of June, 1995.

The Parties agreed that pursuant to [Tenn. Code Ann.] § 30-2-209, Sarah Soard is entitled to payment of $5,000.00 for Homestead.

The Parties agreed that pursuant to [Tenn. Code Ann.] § 30-2-102, Sarah Soard is entitled to [a] Year's Support in the amount of $13,656.00.

The Parties agreed that pursuant to [Tenn. Code Ann.] § 30-2-101, Sarah Soard is entitled to $37,848.92 in Exempt Property.

Inasmuch as Frank and Sarah Soard had been married more than six years but less than nine years, the Parties agreed that Sarah Soard was entitled to an Elective Share of Thirty Percent (30%) of the net estate as set out in [Tenn. Code Ann.] § 31-4-101(a).

Pursuant to [Tenn. Code Ann.] § 31-4-101(b), the Parties agreed to the following determination of the net estate as of November 11, 2003, the Parties acknowledging, however, that the administrative expenses are subject to increase based on attorneys fees and expenses incurred in this Elective Share litigation:

| | | |
|---|---|---|
| Gross Estate | | $872,253.32 |
| Less: | | |
| ORNL Mortgage | $29,408.23 | |
| Funeral and Admin. Exp. | 78,795.27 | |
| Exempt Property | 37,848.92 | |
| Homestead | 5,000.00 | |
| Year's Support | 13,656.00 | 164,708.42 |
| Net Estate | | $707,544.90 |
| 30% of Net Estate | | $212,263.47 |

After determining Thirty Percent (30%) of the net estate as set out in [Tenn. Code Ann.] § 31-4-101(a) and (b), the Parties agreed that said maximum Elective Share amount is $212,263.47, but the Parties disagreed as to how that amount is to be reduced pursuant to [Tenn. Code Ann.] § 31-4-101(c).

(Paragraph numbering in original omitted). Although not a part of the parties' written stipulation, it is abundantly clear from the record that Ms. Soard filed a petition for an elective share.

II.

Tenn. Code Ann. § 31-4-101, as it existed[1] at the time of Mr. Soard's death, *i.e.*, July 14, 2003, provides as follows:

> (a)(1) The surviving spouse of an intestate decedent, or a surviving spouse who elects against a decedent's will, has a right of election, unless limited by subsection (c), to take an elective-share amount equal to the value of the decedent's net estate as defined in subsection (b), determined by the length of time the surviving spouse and the decedent were married to each other, in accordance with the following schedule:

| If the decedent and the surviving spouse were married to each other: | The elective-share percentage is: |
|---|---|
| less than 3 years | 10% of the net estate |
| 3 years but less than 6 years | 20% of the net estate |
| 6 years but less than 9 years | 30% of the net estate |
| 9 years or more | 40% of the net estate |

> (2) For purposes of determining the total number of years to be applied to the computation provided in this subsection, the number of years persons are married to the same person shall be combined. The years do not have to be consecutive, but may be separated by divorce. All years married shall be counted toward the total number of years for purposes of this section.
>
> (b) The value of the net estate includes all of the decedent's real and personal property subject to disposition under the provisions of the decedent's will or the laws of intestate succession, reduced by the following: secured debts to the extent that secured creditors are entitled to realize on the applicable collateral, funeral and administration expenses, and award of exempt property, homestead allowance and year's support allowance.
>
> (c) After the elective-share amount has been determined in accordance with the foregoing subsections (a) and (b), *the amount payable to the surviving spouse by the estate shall be reduced by the value of all assets includable in the decedent's gross estate which were transferred, or deemed transferred, to the surviving spouse or which were for the benefit of the surviving spouse*. For purposes

---

[1] The statute was subsequently amended by 2004 Tenn. Pub. Acts 866, § 2, effective June 8, 2004.

-3-

hereof, the decedent's gross estate shall be determined by the court in the same manner as for inheritance tax purposes pursuant to [Tenn. Code Ann.] §§ 67-8-301 et seq., except that the value of any life estate or trust for the lifetime benefit of the surviving spouse shall be actuarially determined.

(d) The elective-share amount payable to the surviving spouse is exempt from the claims of the unsecured creditors of the decedent's estate.

(Emphasis added). For ease of reference, we will hereinafter sometimes refer to this statute as "the elective-share statute" or "the current elective-share statute."

III.

The issue before us can be simply stated as follows:

Does the "reduction" language set forth in subsection (c) of Tenn. Code Ann. § 31-4-101 – "the amount payable to the surviving spouse by the estate shall be reduced by the value of all assets includable in the decedent's gross estate which were transferred, or deemed transferred, to the surviving spouse or which were for the benefit of the surviving spouse" – contemplate the deduction, from a surviving spouse's percentage share of the net estate, of the value of the surviving spouse's exempt property, homestead allowance, and year's support allowance?

The trial court held that "subsection (c) precisely states that all assets includable in the decedent's gross estate which are payable to the surviving spouse must be credited against the maximum [e]lective [s]hare to determine the actual amount of the [e]lective [s]hare payable to the surviving spouse." In its order, the trial court concluded that

based [up]on the clear language of [Tenn. Code Ann.] § 31-4-101(c), the amounts paid to the surviving spouse for [h]omestead, [y]ear's [s]upport and [e]xempt [p]roperty, as assets included in the decedent's gross estate, are sums which must be credited against the maximum amount available as an [e]lective [s]hare to determine the amount "payable" to the surviving spouse.

As far as we can determine, this case presents a question of first impression.

-4-

Since the material facts are not in dispute, our *de novo* review is one of law and, hence, unburdened by a presumption of correctness as to the trial court's judgment. ***S. Constructors, Inc. v. Loudon Co. Bd. of Educ.***, 58 S.W.3d 706, 710 (Tenn. 2001).

IV.

In the instant case, the parties stipulate that the gross estate is valued at $872,253.32. However, they do not identify the component parts of the "gross estate." Furthermore, there is nothing in the other parts of the record which sets forth with specificity the items included within this concept. However, since the "gross estate" stipulation reflects that it is made "[p]ursuant to [Tenn. Code Ann.] § 31-4-101(b)," we assume that this starting-point number of $872,253.32 comprises, in the words of the aforesaid statutory provision, the value of "all of the decedent's real and personal property subject to disposition under the provisions of the decedent's will or the laws of intestate succession."[2] It is clear that this language contemplates assets that pass in probate and not those that pass outside of probate.

The parties further stipulate – again pursuant to Tenn. Code Ann. § 31-4-101(b) – that the value of the "net estate" is $707,544.90. They also agree that the maximum elective-share amount, determined in accordance with subsections (a) and (b) of the elective-share statute, is $212,263.47. Finally, they stipulate that subsection (c) of the elective-share statute requires that Ms. Soard's elective-share amount be reduced by the following items:[3]

| | |
|---|---|
| Social Security Payment | $ 250.00 |
| VA Death Benefit | 600.00 |
| Joint Assets Passing Outside Probate | 20,891.82 |
| Total | $21,741.82 |

We now reach the point of the parties' very sharp disagreement. The estate argues that, even though Ms. Soard's award of exempt property, homestead allowance, and year's support allowance have already been subtracted from the value of "the decedent's real and personal property subject to disposition under the provisions of the decedent's will or the laws of intestate succession" as a part of the computation of the net estate under subsection (b) of the elective-share statute, these three items must be subtracted *again*, this time from the value of the widow's percentage share of the net estate, in order to arrive at the elective-share amount payable to the surviving spouse. The estate maintains that the further deduction of these three statutory entitlements is mandated by subsection (c) of the elective-share statute.

---

[2]The record does not reveal whether Mr. Soard died testate or intestate. Our resolution of the issue before us is not affected by whether he died with or without a will.

[3]Since the parties stipulate that these items are proper deductions from the surviving spouse's maximum elective share, and there is no issue before us regarding the propriety of these deductions, we do not find it necessary to address whether each of these deductions is appropriate under subsection (c) of the elective-share statute.

V.

The effect of the parties' disagreement in monetary terms is illustrated thusly:

|  | Widow's Computation | Estate's Computation |
|---|---|---|
| Elective-share amount per subsections (a) & (b) | $212,263.47 | $212,263.47 |
| Less: Agreed-upon deductions | 21,741.82 | 21,741.82 |
|  | $190,521.65 | $190,521.65 |
| Less: Widow's Exempt Property, Homestead, and Year's Support | N/A | 56,504.92 |
| Elective-Share Amount due Widow | $190,521.65 | $134,016.73 |

VI.

Ms. Soard argues that the critical language in subsection (c) of the elective-share statute pertains to assets that are transferred to a surviving spouse *outside* the estate. She points to language in our case of ***In re Estate of Morris***, 104 S.W.3d 855 (Tenn. Ct. App. 2002), which she claims is supportive of her position. She also relies upon an illustration of how the elective-share statute is applied as found in 18 Albert W. Secor, *Tennessee Practice: Tennessee Probate* § 10.5 (2d ed. 2002). She notes that in neither authority is mention made of subtracting exempt property, homestead or the year's support allowance from the surviving spouse's percentage share of the net estate.

The widow further argues that the estate's interpretation of the statute runs afoul of well-established rules of statutory construction. She contends that to construe the statute as requiring the deduction *twice* of the aforesaid three items "would frustrate the purpose of the legislation." She argues that the interpretation placed on the statute by the estate renders this legislative enactment "absurd, unjust or futile." Finally, the widow argues that the double deduction of these three items "would not be sensible, would work a manifest inconvenience, would produce an absurd result and would be unjust."

VII.

The estate counters by pointing out that the "reduction" concept embodied in subsection (c) of the elective-share statute was not in the elective-share statute in effect prior to the amendments

effective January 1, 1998.[4]  Those amendments deleted the earlier version of the elective-share statute in its entirety.  The estate reads the language of subsection (c) broadly to mean, in the language of the estate's brief, that there is a credit against the surviving spouse's percentage share of the net estate for "all items in the gross estate that the spouse otherwise receives."  The estate notes that subsection (c) of the elective-share statute expressly provides that the "gross estate," as that concept is used in that subsection, "shall be determined by the court in the same manner as for inheritance tax purposes."  Tenn. Code Ann. § 31-4-101(c).  The estate contends that exempt property, homestead and a year's support are *not* excluded from the gross estate for inheritance tax purposes.  In support of this argument, the estate relies upon the provisions of Tenn. Code Ann. § 67-8-303 (2003),[5] a section of the inheritance tax statutory scheme describing the types of property subject to that tax.  As can be seen, the property which is subject to the tax is broadly stated and does not contain an express exclusion for exempt property, homestead and a year's support.  The estate argues that subsection (c) is unambiguous, and that our obligation is to enforce its provisions regardless of how we feel about the justice of its application to the facts of the case at bar.

VIII.

In this case, we are called upon to interpret and apply the provisions of the elective-share statute.  In *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503 (Tenn. 2004), the Supreme Court recited many of the general principles pertaining to statutory construction:

> Issues of statutory construction are questions of law that this Court
> reviews de novo without any presumption of correctness.

---

[4] 1997 Tenn. Pub. Acts. 426.  Section 26 of Chapter 426 provides that the amendments shall apply to all estates of decedents dying on or after January 1, 1998.  As previously noted, Mr. Soard died July 14, 2003.

[5] Tenn. Code Ann. § 67-8-303(a)(1)(A)-(E), a part of the Tennessee inheritance tax scheme, provides as follows:

> (a)  A tax is imposed for the general uses of the state, under the conditions and subject to the conditions and limitations prescribed in this part, upon transfers, in trust or otherwise, of the following property, or any interest therein or accrued income therefrom:
>
> (1)  When the transfer is from a domiciliary of this state:
>
> (A)  Real property situated within this state;
>
> (B)  Tangible personal property, except such as has an actual situs without this state;
>
> (C)  All intangible personal property;
>
> (D)  Proceeds of insurance policies, except as provided in this part; and
>
> (E)  Proceeds of certain employee benefit trusts and plans to the extent provided in this part; . . .

-7-

> Our duty in construing statutes is to ascertain and give effect to the intention and purpose of the legislature. "'Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language.'"
>
> When the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application. Where an ambiguity exists, we must look to the entire statutory scheme and elsewhere to ascertain the legislative intent and purpose. The statute must be construed in its entirety, and it should be assumed that the legislature used each word purposely and that those words convey some intent and have a meaning and a purpose. The background, purpose, and general circumstances under which words are used in a statute must be considered, and it is improper to take a word or a few words from its context and, with them isolated, attempt to determine their meaning.

*Id*. at 506-07 (citations omitted). In construing legislation, courts must harmonize, if possible, all parts of the legislature's enactment. *See* **Marsh v. Henderson**, 424 S.W.2d 193, 196 (Tenn. 1968) ("A statute should be construed, if practicable, so that its component parts are consistent and reasonable. . . . Inconsistent phrases are to be harmonized, if possible, so as to reach the legislative intent."). *See also* **State v. Netto**, 486 S.W.2d 725, 729 (Tenn. 1972).

"A construction will be avoided, if possible, that would render one section of the act repugnant to another. Or one that would produce an absurd result." **Tenn. Elec. Power Co. v. City of Chattanooga**, 114 S.W.2d 441, 444 (Tenn. 1937) (citations omitted). *See also* **Turner v. Eslick**, 240 S.W. 786, 789 (Tenn. 1922).

"When the legislature enacts provisions of a uniform or model act without significant alteration, it may be generally presumed to have adopted the expressed intention of the drafters of that uniform or model act. However, when the legislature makes significant departures from the text of that uniform act, we must likewise presume that its departure was meant to express an intention different from that manifested in the uniform act itself." **Heirs of Ellis v. Estate of Ellis**, 71 S.W.3d 705, 713-14 (Tenn. 2002) (citations omitted).

IX.

Our interpretation of the current version of the elective-share statute begins with a look back at the prior version of that statute. Before January 1, 1998, the elective-share statute in Tennessee provided as follows:

(a)  A decedent's surviving spouse has the right to elect to take an elective share.  The elective share is one third (1/3) of the decedent's net estate as defined in subsection (b).  The right to elect an elective share is available to the surviving spouse of an intestate decedent and a testate decedent if the surviving spouse elects against the decedent's will.  When the elective share is determined, it is exempt from the unsecured debts of the decedent incurred after April 1, 1977.  In determining the elective share, it is not reduced by any estate or inheritance taxes.

(b)  The net estate includes all of the decedent's real and personal property subject to disposition under the terms of the decedent's will or the laws of intestate succession reduced by funeral and administration expenses, homestead, exemptions and year's support.

Tenn. Code Ann. § 31-4-101 (repealed effective January 1, 1998, by 1997 Tenn. Pub. Acts 426, § 17.

Under the earlier version of the statute, the method of calculating the surviving spouse's elective share was clear and relatively simple to apply.  A surviving spouse had an absolute right "to elect to take an elective share."  Once the election was made, the surviving spouse, regardless of the length of his or her marriage to the decedent, was entitled to one-third of a relatively well-defined concept, *i.e.*, the value of the real and personal property that passes under the decedent's will or the laws of intestate succession reduced by funeral and administration expenses, homestead, exempt property, and a year's support allowance.  There were no further reductions.

In 1995, the 99th Tennessee General Assembly adopted House Joint Resolution No. 223 appointing a Special Joint Commission[6] whose charge was to "[s]tudy all aspects of the probate law in Tennessee with a view towards adopting the Uniform Probate Code by revising, updating, and clarifying the law so that it may give clear and consistent guidance to those using it and those affected by the law in order to ensure, to the extent possible, the uniformity of probate law from any legal uncertainties related to this important process; and [r]ecommend legislation to effect the above goals."  (Numbering in original omitted).  The commission was directed to file "the report of its findings and any recommendations concerning legislation, with the 99th General Assembly no later than December 15, 1995."

As directed by the General Assembly, the commission filed a report setting forth its fact-finding process, its decision-making process, and its recommendations.  The report notes that the

---

[6]At one point in the resolution, the body is referred to as a "committee."  In all other parts of the resolution, it is referred to as the "commission."

commission found "little or no public support for the adoption of the Uniform Probate Code in its entirety." At another point in the report, the commission noted that it "decided that a wholesale revision of the probate law at this time is unnecessary and that the Uniform Probate Code, which also covers fields other than those typically considered to be of a probate nature, should not be adopted as a whole for various reasons."

The commission made 15 numbered recommendations, one of which is the following:

> To modernize the elective share for surviving spouses to take into account the length of the marriage and to redefine how the amount is ascertained.

Its recommendations were, in the language of the report, "incorporated into a draft of a legislative bill which accompanie[d] [the] report."

By Chapter 426, Public Acts of 1997, the General Assembly, without discussion, adopted verbatim that portion of the proposed legislation dealing with a surviving spouse's elective share by deleting the prior elective-share statute in its entirety and by substituting the current version of the elective-share statute.[7] As previously noted, the new version became effective January 1, 1998, and applies to all estates of decedents dying on or after that date.

The current version of the elective-share statute retains a few of the features of the old statute, *i.e.*, the *right* to elect is still unconditional; the starting point of the calculation, once the percentage of entitlement is established, is still "the decedent's real and personal property subject to disposition under the provisions of the decedent's will or the laws of intestate succession"; the value of the aforesaid concept is still reduced by funeral and administration expenses, homestead, exempt property, and the year's support, before the percentage of entitlement is applied to the balance; and the surviving spouse's entitlement under the statute is still not subject to the claims of the decedent's unsecured creditors.

While there are similarities between the two versions, there are striking differences, both in concept and language.

The current version of the elective-share statute replaces the "one size fits all" approach of the old statute – that all surviving spouses were previously entitled to a one-third elective share – with the phased-in *approach* of the Uniform Probate Code ("the UPC") under which the percentage amount of a surviving spouse's elective share increases as the length of the parties' marriage increases. While adopting the UPC's approach, the current statute utilizes only four levels of percentage entitlement compared to the 16 levels of the UPC. The current statute does adopt the UPC provision that all years of marriage between the parties are counted even if those periods "may be separated by divorce."

---

[7] It appears that the legislature adopted all of the legislation proposed by the commission.

While the current version of the elective-share statute retains the starting point of "the decedent's real and personal property subject to disposition under the provisions of the decedent's will or the laws of intestate succession," the new version, in subsection (b), introduces a new deduction from the concept: "secured debts to the extent that secured creditors are entitled to realize on the applicable collateral." Tenn. Code Ann. § 31-4-101(b).

As can be seen, the new version of the elective-share statute has significantly changed the method of determining the surviving spouse's elective-share percentage. Under the new approach, some surviving spouses will receive more than the previous one-third share while others will receive less. While this was a major change introduced by the amendments effective January 1, 1998, it is not the one at issue in the case at bar. That "distinction" belongs to the commission's recommendation as to "how the [elective-share] amount is ascertained."

X.

In adopting House Joint Resolution No. 223, the General Assembly was influenced by the 1990 adoption[8] of a new version of the UPC by the National Conference of Commissioners on Uniform State Laws. The underlying theory behind the significant revisions to the elective share sections of the UPC has been described thusly:

> In constructing a new elective share, the drafters of the UPC applied two theories, both described in the General Comment to the elective share section of the 1990 UPC. Unif. Prob. Code art. II, pt. 2, gen. cmt. (1993). One theory, the marital partnership theory, views marriage as an economic partnership to which both spouses contribute productive effort. This theory holds that each spouse is entitled to one-half of the economic gains of the marriage. The other theory, the need-based theory, holds that a decedent spouse should provide for the surviving spouse. A married couple's moral duties to one another, the expectations of the surviving spouse and public concern that the surviving spouse not be left to depend on the state for support form the basis of this theory. Taken together, the two theories establish a duty of spousal support that arises in marriage and continues to some degree after death. Therefore, each spouse has a right to a share of the economic gains of both spouses during the marriage.
>
> To implement the need-based theory, the 1990 UPC creates a supplemental elective share of $50,000. To the extent the elective share, calculated as a percentage of the augmented estate, is less than $50,000, the surviving spouse is entitled to a supplemental elective

---

[8]Clarifying amendments were adopted in 1993.

share equal to the difference. Stated another way, the minimum amount of a spouse's elective share is $50,000. Because the augmented estate includes the surviving spouse's assets, the spouse will receive a supplemental elective share only if his or her own assets are less than $50,000.

To implement the partnership theory, the 1990 UPC creates an augmented estate that includes property owned and controlled by both spouses–probate property and property passing under will substitutes. The guiding principle of giving each spouse one-half of the marital property made it necessary to look at the assets owned by both spouses and not just property controlled by the decedent. In contrast to the prior UPC, the 1990 UPC makes no exceptions for insurance [,] annuities and pensions.

A difficulty faced by the drafters of the 1990 UPC is that not all property owned by spouses is marital property. A spouse may have inherited property or acquired property before marriage. To avoid a post-death determination of marital and separate property, the drafters devised a phased-in elective share based on the length of the marriage. The goal of this provision was to approximate increased marital sharing and the increased contribution to the acquisition of marital assets as a marriage endures. The drafters concluded that "[b]ecause ease of administration and predictability of result are prized features of the probate system," a "mechanically determined approximation system" makes sense. Unif. Prob. Code art. II, pt. 2, gen. cmt. (1993).

Susan N. Gary, *Share and Share Alike? The UPC's Elective Share*, 12 Prob. & Prop. 18, 20 (1998). The author opined as follows regarding the amendments to the Tennessee elective share statute effective January 1, 1998:

> *A law adopted in Tennessee in 1997 borrows concepts from the UPC and uses them to modify what is still essentially a traditional elective share statute.* The new Tennessee statute phases in the elective share percentage from 10% for less than three years of marriage to 40% for marriages lasting nine years or more. The percentage is applied to the "net estate," which the law defines as the probate estate less certain secured debts, funeral and administration expenses and family allowances. *Property that the surviving spouse receives, whether probate or nonprobate property*, reduces the elective share. It appears that the law will charge disclaimed interests against the surviving spouse because the statute refers to assets "which were

transferred, or deemed transferred . . . or which were for the benefit of the surviving spouse." Tenn. Code Ann. § 31-4-101(c)(1997).

*The Tennessee statute considers the augmented estate, determined by reference to the Tennessee inheritance tax statute, only to reduce the surviving spouse's share.* If the decedent dies holding only nonprobate assets, the value of the net estate, and thus the elective share, will be zero. . . .

***Id***. at 22 (emphasis added).

It is clear to us that the changes to the Tennessee elective-share statute effective January 1, 1998, while adopting some of the thrust of the 1990 changes to the UPC elective share provisions, depart from the model act in significant and substantial ways. First, the 1997 amendments did not adopt the UPC's concept of a minimum elective share stated in monetary terms. It is clear that there is no such monetary minimum share under the current version of our statute. Second, as pointed out in the article just quoted, the current elective-share statute considers the concept of an "augmented estate" to reduce the surviving spouse's elective share, but continues to use the "net estate" concept in defining the amount to which the surviving spouse's percentage is applied.[9]

The differences between the current version of the elective-share statute and the provisions of the UPC relating to a surviving spouse's elective share are so significant as to lead us to conclude that the legislature's departure "was meant to express an intention different from that manifested in the uniform act itself." ***Heirs of Ellis***, 71 S.W.3d at 713-14. Therefore, even though it is clear that the Special Joint Commission was directed by the General Assembly to study the probate laws of Tennessee "with a view towards adopting the [UPC]," the commission and later the legislature itself chose not to adopt the expansive and far-reaching language of the UPC as it pertains to the methodology of computing the surviving spouse's elective share, other than the adoption of the theory of the UPC that the percentage share should be tied to the length of the parties' marriage. We conclude from this that the intention behind the UPC is of no particular help in determining whether the language of subsection (c) of the elective share statute contemplates the reduction of homestead, exempt property, and year's support from the surviving spouse's percentage share of the net estate.

We have discussed the UPC extensively simply because of the General Assembly's charge to the commission. In view of this charge, we felt it essential to expressly point out that the legislature's 1997 amendments evidence a general intention to go in a direction other than the one charted by the UPC. For the purposes of illustration and comparison, we have attached a copy of the UPC provisions addressing the surviving spouse's elective share, as last amended in 1993, as an

---

[9]The "augmented estate" as that language is used in the UPC's elective share provisions has the following expansive components: the decedent's net probate estate, the decedent's nonprobate transfers to others, the decedent's nonprobate transfers to the surviving spouse, and the surviving spouse's property and nonprobate transfers to others. *See* Unif. Probate Code § 2-203 (amended 1993). Under the UPC, the surviving spouse's elective-share is stated in terms of "the elective-share percentage of the *augmented* estate." Unif. Probate Code § 2-202 (emphasis added).

appendix to this opinion.  In the interest of brevity, we have omitted the official comments and illustrations.

XI.

The estate urges us to hold, as did the trial court, that the elective-share statute requires that the surviving spouse's statutory entitlements to homestead, exempt property, and a year's support allowance be deducted *twice* as a part of the computation outlined in the elective share statute, *i.e.*, first, in reducing the gross estate passing in probate to arrive at the net estate subject to the surviving spouse's percentage share, and, second, from the product of the multiplication of the net estate by the surviving spouse's percentage share.  We agree with the widow in this case that such an interpretation leads to an absurd result.

We find ambiguity in the wording of the statute.  We note that while the legislature referred to the three statutory entitlements by name in subsection (b), there is no such explicit reference in subsection (c).  The fact that the legislature referred to these statutory entitlements by name in subsection (b) clearly shows that they were on the mind of that body when it adopted the 1997 amendments. Query:  If the legislature had intended, in subsection (c), to mandate the deduction of these same three items a *second* time in this continuing statutory computation, why did it not expressly refer to them as it did in subsection (b)?  In other words, if the legislature had intended to include these items in the general language of subsection (c), why did it not refer to the decedent's "gross estate" as "the gross estate, *including the surviving spouse's homestead, exempt property, and a year's support*" or by the use of similar language?

The current version of the elective-share statute is hardly a model of clarity as far as the interplay between subsections (b) and (c) is concerned.  While the author quoted earlier in this opinion may be right when she opines that our legislature "borrow[ed] concepts from the UPC and use[d] then to modify what is still essentially a traditional elective[-]share statute," it is clear to us that the legislature rejected the comprehensive statutory scheme thought to be necessary by the Commissioners on Uniform State Law to effectuate their desire to adopt a "marital partnership theory" and a "need-based theory" in the elective-share concept.  By adopting bits and pieces from the earlier version of the elective-share statute as well as concepts from the UPC and then "cutting and pasting" them with some new language into a much shorter version of an elective-share statute, the legislature has created more questions than answers.  If the legislature has rejected the UPC's dual theories mentioned above, either in whole or in part, and we believe it has, what is the theory behind the current version of the elective-share statute?  What is the purpose or theory underlying the deduction set forth in subsection (c)?  We are left to ponder these and related questions. Assuming that the estate is correct in its interpretation of subsection (c), what is the rationale behind the deduction of the surviving spouse's statutory entitlements from the maximum elective share after these very same items have already been "cleared out" of the gross estate as a part of the computation leading to the calculation of that same maximum elective-share amount?

We have concluded, and so hold, that the language of subsection (c) of the elective-share statute cannot, consistent with the clear meaning of subsection (b), be read to include homestead, exempt property, and a year's support.

We believe the reason behind the deduction of the surviving spouse's statutory entitlements from the gross probate estate under subsection (b) is clear: it is to remove these items from the assets passing in probate *before* the surviving spouse's percentage is applied. The deduction at this point in the computation ensures that the surviving spouse does not get these three statutory entitlements *plus* a percentage of the same items. We believe the deduction at this stage of the statutory computation was intended to avoid "double-dipping." Thus, the deduction from the probatable assets is reasonable and logical.

We cannot say the same for a subsequent deduction of the same items as a part of what is essentially a continuing statutory computation. Such a deduction, in the overall scheme of things, is illogical and defies explanation. We recognize that it is the prerogative of the legislature to adopt such legislation as it deems appropriate so long as it does not offend a provision of the United States Constitution or the Tennessee Constitution. Certainly, it has the authority to enact legislation which appears on its face to be illogical should it choose to do so. However, we believe that, had the legislature intended to deduct these three items a second time in the same statutory computation, it would have referred to them by name in subsection (c) just as it did in subsection (b).

If one of the purposes behind the current version of the elective-share statute is to reduce the surviving spouse's elective share to compensate for the surviving spouse's receipt of homestead, exempt property, and a year's support, we believe the legislature could have accomplished this objective in one of at least two ways. First, it could have – and we believe it did – construct a computation that removes these items from the gross probatable estate before the surviving spouse's percentage share is applied. Second, had it chosen not to pursue the foregoing approach in carrying out this presumed objective, it could have structured a computation providing that (a) the percentage share is applied to the gross probatable estate *without prior deduction for the statutory entitlements* and (b) the result of that computation would then be reduced by the statutory entitlements. It does not make any sense, however, to do the first *and* then apply a significant variation of the second, resulting in a deduction of these entitlements at the beginning of the computation and then again after the maximum elective share has been determined.

We believe the estate's interpretation is suspect for another reason. As can be seen from the illustration on page six of this opinion, the widow, having chosen to pursue her right to homestead, exempt property, and a year's support, would receive, under the approach of the estate and the trial court, an elective share of $134,016.73 plus her three statutory entitlements of $56,504.92 or a total of $190,521.65. If she had chosen not to receive her statutory entitlements, her elective share would have been calculated as follows:

|  |  |  |
|---|---|---|
| Gross Estate |  | $872,253.32 |
| Less: |  |  |
| ORNL Mortgage | $29,408.23 |  |
| Funeral and Admin. Exp. | 78,795.27 | 108,203.50 |
| Net Estate |  | $764,049.82 |
| 30% of Net Estate |  | $229,214.94 |

Thus, as the estate and the trial court interpret the statute, the widow would receive *more*, *i.e.*, $229,214.94, if she foregoes her three statutory entitlements than she would receive, *i.e.*, $190,521.65, if she claimed them  We refuse to read the statute in a way that attributes to the General Assembly an intention to discourage a surviving spouse from pursuing homestead, exempt property, and a year's support, all entitlements granted by that same legislative body.

We have attempted to construe subsections (b) and (c) of the elective-share statute in a way that will harmonize these two provisions. *See Marsh*, 424 S.W.2d at 196.  We believe the only way they can be harmonized is if subsection (c) is read so as not to include the surviving spouse's homestead, exempt property, and year's support among the items to be deducted from the surviving spouse's percentage share of the net estate.

In reaching our decision, we expressly do not rely upon two of the authorities cited by the widow, *i.e.*, *In re Estate of Morris*, 104 S.W.3d 855 (Tenn. Ct. App. 2002), and 18 Albert W. Secor, *Tennessee Practice: Tennessee Probate* § 10.5 (2d ed. 2002)*.*  We do not believe that either of these authorities is implicated by the facts and issue now before us.

We recognize that the "reduction" concept embodied in subsection (c) was not in the elective-share statute prior to January 1, 1998.  We also recognize that the concept of the "value of all assets" as found in subsection (c) of the elective-share statute is different from, and more expansive than, the concept of the assets passing through probate as addressed in subsection (b).  However, we are not persuaded that the concept in subsection (c) is broad enough to compel, for a second time, the deduction of the surviving spouse's three statutory entitlements as a part of the statutory computation of the amount of the surviving spouse's elective share.  We specifically hold that the language of subsection (c) was not intended to include, and does not include, the statutory entitlements set forth in Tenn. Code Ann. §§ 30-2-101 (2001), 30-2-102 (2001), and 30-2-209 (2001).  We believe a contrary holding with respect to the statutory entitlements would lead to an absurd result.  We decline to go there.

XII.

The judgment of the trial court is reversed.  This case is remanded to the court below for further proceedings.  Costs on appeal are taxed to the Estate of Frank Soard.

_____
CHARLES D. SUSANO, JR., JUDGE